# WHITSON

*v.*

## COLUMBIA PHONOGRAPH COMPANY.

--------

PATENTS; LICENSES; CONTRACTS; PHONOGRAPHS AND GRAPHOPHONES; RESTRAINING ORDERS.

1. The transfer of a patent will not operate to destroy the rights of a prior licensee.

2. A contract whereby the owner of phonograph and graphophone patents grants to another the exclusive right to lease the instruments to the public at specified rates within a designated territory, the property in the instruments to remain in such owner, is not invalid in itself as seeking to impress upon a chattel or personal property a qualified ownership inconsistent with the freedom of transfer and rights of possession, nor does it involve a violation of public policy in seeking to restrain the freedom of sale and transfer of a patented article.

3. Where the licensee of a former owner of phonograph and graphophone patents, having the right under his contract to lease phonographs and graphophones at specified rates within a designated territory, seeks to obtain a temporary restraining order enjoining a third party who has become the owner of the patents from infringing upon his rights within the territory designated, the fact that the licensee sells only graphophones and not phonographs, thereby discriminating against the latter, is not a ground for refusing the restraining order, although that fact might be availed of by appropriate proceedings to enforce or vacate the contract.

4. Where on an appeal from an order granting a motion for a preliminary restraining order, it appears that the opposition to the motion was made before answer filed and upon affidavits only, and that the complainant in his bill stated a case which entitled him to the restraining order, this court will not disturb the discretionary power exercised by the lower court and go into the merits of the case.

No. 1096. Submitted October 3, 1901. Decided November 5, 1901.

HEARING on an appeal by one of several defendants from an interlocutory order of the Supreme Court of the District

of Columbia, granting a temporary restraining order. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal by John E. Whitson and Walter J. Whitson from an interlocutory order of the Supreme Court of the District of Columbia, whereby, in a suit in equity instituted by the appellee, the Columbia Phonograph Company, as complainant against the appellants and a corporation of the State of New Jersey known as the National Phonograph Company, as defendants, an injunction *pendente lite* was allowed to restrain said defendants from selling or dealing in phonographs or phonograph supplies in the District of Columbia.

From the record, which consists only of the bill of complaint, the exhibits thereto, some affidavits in support of the bill, and affidavits on behalf of the appellants, it appears that the Columbia Phonograph Company, a corporation under the laws of the State of West Virginia but having its general office and doing business in this District, was organized for the purpose of exploiting and placing upon the market the talking machine known as the graphophone, protected by letters-patent of the United States issued in the year 1886, to Bell and Tainter; and that the National Phonograph Company, above mentioned, was organized in the State of New Jersey, and under the laws of that State, for the purpose of exploiting and placing upon the market a similar talking machine known as the phonograph, the invention of Thomas A. Edison, to whom letters-patent of the United States for it and for its improvements were issued in the year 1888 and subsequent years. The two inventions, although patentably different, were of the same general character and subserved the same purpose, the reproduction of the sounds of the human voice; and, as was natural, litigation followed between their respective owners. Ultimately, however, an agreement was reached between them; and it is the alleged violation of that agreement that has given rise to the present suit.

The facts that led up to this controversy, so far as they can be gathered from the record before us and are necessary to be here stated, are these:

For the purpose of bringing the inventions of Mr. Edison into use two companies were organized in the State of New Jersey, the place of his residence, one designated as the Edison Phonograph Company, which by contract with Edison became the owner of the patents and was entitled to become the owner of any other inventions in the same line that might be made by him, and the other designated as the Edison Phonograph Works, which acquired from Edison the exclusive right of manufacturing the phonographs. Edison was the owner of all but a comparatively small fraction of the stock of the Edison Phonograph Company; and he also controlled the other company, the Edison Phonograph Works. Being so situated, he entered into a contract on June 28, 1888, with one Jesse H. Lippincott of New York, whereby he agreed to sell to Lippincott, and Lippincott agreed to buy from Edison the entire capital stock of the Edison Phonograph Company, except 150 shares, which had already been transferred by Edison to another person, but for the repurchase of which there was provision made in the contract, so as to give Lippincott the entire and absolute ownership. The consideration for the transfer was the payment by Lippincott to Edison of the sum of $500,000, in four several installments of different amounts, all within the same year 1888, and the organization by Lippincott of a new company or corporation to be designated as the American Phonograph Company, whose business it should be to exploit the phonograph and to introduce it into commercial use. And provision was made for the execution of contracts between such company, when organized, on the one hand, and Edison and the Edison Phonograph Works, on the other hand.

Before August 1, 1888, the contemplated company was organized by Lippincott, also in the State of New Jersey, although under a slightly different name, the North American Phonograph Company; and on the said last-mentioned day

Edison entered into the contract with it and with Lippincott required by the preceding agreement. Lippincott, it seems, had acquired control also of the graphophone; and by the agreement of August 1, 1888, it was provided that Lippincott and the North American Phonograph Company, of which he became president, should do their utmost to introduce into commercial use both the phonograph and the graphophone impartially; that the two instruments should be kept separate; that Edison would assign to the company any improvement upon the phonograph that might be made by him at any time within fifteen years thereafter; and that the field of operations of the company should comprise the United States and Canada, but not any other countries. And it was added that the contract was based on the assumption that the agreement of June 28, 1888, between Edison and Lippincott had been or would be carried out.

With these agreements in force, the North American Phonograph Company, now owning or controlling both the phonograph and the graphophone, entered into a contract on January 15, A. D. 1889, with Edward D. Easton, of this City and District, whereby it was provided that, in consideration of the payment of $25,000 and other valuable considerations by Easton, this latter should for the term of five years thereafter, have the exclusive right to lease the phonograph and the graphophone, and their respective appurtenances, and to let the same to others, for the whole territory comprised within the States of Delaware, Maryland, and the District of Columbia; that the company should not grant to others or itself exercise any similar rights during such term within said territory; that the phonographs and graphophones to be dealt in should remain the property of the company, and should only be rented to and by Easton at certain specified rates; that if, by January 1, 1890, or at any time thereafter, the system of merely leasing instruments to the public should be found by the North American Graphophone Company to be unsatisfactory, it might require Easton to give to the public the option of either leasing or purchasing them at stipulated prices; and that, within

six months after the date of the agreement, Easton should organize a company under the laws of the State of West Virginia, with a capital stock of $125,000, to which his interest under the contract should be assigned, and which should perform the contract. It was further provided by this contract that the company so to be organized should, immediately upon its organization, deposit with a trust company in New York, for delivery to the North American Phonograph Company, or to Jesse H. Lippincott, trustee, 5,000 shares of its capital stock, full paid, of the par value of $25,000; and that upon such deposit, the license and privilege granted to Easton and to inure to the benefit of the company to be organized by him, should be extended to March 26, 1903, and for such further time as might be authorized.

In pursuance of this contract, Easton organized the Columbia Phonograph Company, the complainant in the suit, and the appellee before us; and the North American Phonograph Company thereupon entered into contract directly with it, and confirmed to it its agreement with Easton, and the exclusive rights and privileges conceded to him. It is understood that the deposit of stock required to be made by the Columbia Phonograph Company was duly made, and that the extension of its exclusive right and privilege under the contract thereupon became effective until March 23, 1903.

In the summer of 1894, after the extended term had been entered upon, the North American Phonograph Company became insolvent; its affairs went into the hands of a receiver; and its assets were disposed of under direction of the Court of Chancery in New Jersey. Whether the company itself was formally dissolved, does not appear; but presumably it is defunct.

The National Phonograph Company, a corporation organized under the laws of New Jersey, and having its principal place of business at Orange, in that State, is alleged in the bill of complaint to be the " successor of the North American Phonograph Company in the phonograph business," and to be " bound by the contracts and agreements of the latter ";

and it is alleged also in the bill that " it is the sole and exclusive selling agent for all phonographs and phonograph supplies manufactured in accordance with the said Edison phonograph inventions and under the said Edison phonograph patents "; and that it " does not sell its said phonographs outright, but in connection with a license agreement under which it retains a certain control of the same." On the other hand, it is averred by an officer of this company, who makes an affidavit in this case on behalf of Whitson Brothers, that the company, which was incorporated on January 26, 1896, and which purchased some of the assets of the North American Phonograph Company, but not, as it claims, any rights of the North American Phonograph Company in the contracts made by that company with Easton and the Columbia Phonograph Company, is not the successor of the North American Phonograph Company, and is engaged in the business of selling phonographs and graphophones under license from the Edison Phonograph Company and the American Graphophone Company respectively. In this affidavit it is further stated that the National Phonograph Company has sold phonographic goods to the Columbia Phonograph Company, as well as to Whitson Brothers, and others. And the Whitson Brothers, the appellants here, in an affidavit filed by one of them, admit that they are dealers in phonographs and phonographic supplies in the District, and that their purchases are made from the National Phonograph Company at Orange, in New Jersey, whence their goods are shipped to this city by the company. From the affidavits on behalf of the defendants it also appears that the Columbia Phonograph Company has practically ceased to deal in phonographs, and confines itself to the traffic in graphophones and materials connected therewith; and the inference is that the controversy is the outcome of rivalry and antagonism between the owners of the rival patents.

In this condition of things the Columbia Phonograph Company, on April 22, 1901, filed its bill in equity in the Supreme Court of the District against the appellants, John E. Whitson and Walter J. Whitson, and the National Phonograph Company, as defendants, for an injunction to restrain

them, and each of them, and their agents, " from directly
or indirectly using or causing to be used, or selling or caus-
ing to be sold, or letting or causing to be leased, or offering
or causing to be offered for sale or to let within the States
of Maryland and Delaware and within the District of Colum-
bia any phonograph or phonograph supplies." Only the
Whitsons were served with process; the National Phonograph
Company was not served, and has not entered an appearance
in the cause; but one of the affidavits filed on behalf of the
Whitsons was made by the assistant general manager of the
company, who fully and clearly states in it the position of
the company in the controversy.

Upon the filing of the bill of complaint, which was sup-
ported by affidavits, motion was made for an injunction
*pendente lite;* and the motion was opposed on behalf of the
Whitsons, who filed affidavits in opposition thereto. The
court below, however, upon consideration of the motion,
granted the injunction *pendente lite;* and from its order of
allowance of the injunction the present appeal has been prose-
cuted by the Whitsons.

It may be added that this is not the first occasion on which
the Columbia Phonograph Company has deemed its rights
in this District under the contract with the North American
Phonograph Company to have been violated, and has had
recourse to legal proceedings to restrain such violation. In
1893, as appears from the record while the North American
Phonograph Company was yet in active existence, one Tewks-
bury and one Spencer, claiming to act under the authority
of that company, undertook to procure the manufacture of
sound records within the District of Columbia in disregard
of the rights of the Columbia Phonograph Company, and
were restrained by injunction from so doing.

*Mr. S. R. Church* and *Mr. Howard W. Hayes* for the ap-
pellants.

*Mr. Philip Mauro* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

Section 4898 of the Revised Statutes of the United States being section 36 of the Patent Act of July 8, 1870, provides that " every patent or any interest therein shall be assignable in law by an instrument in writing; and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States." And it adds: "An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the patent office within three months after the date thereof."

Under this provision of the statute, the North American Phonograph Company, which at the time had full and complete control over the Edison Phonograph patents, gave to the appellee, the Columbia Phonograph Company, for a term of years which has not yet expired, the exclusive right to deal in phonographs and phonograph supplies in this District, as well as in the States of Maryland and Delaware; and, if its contract in the premises for that purpose be not in itself invalid, there is no good reason shown why it should not be regarded as yet in force and effect. It can make no difference in this regard that the North American Phonograph Company became insolvent, and is extinct or moribund, or has passed into innocuous desuetude, and that its assets have gone into other hands. Nor is it of any consequence whether the National Phonograph Company is, or is not, to be regarded as the successor in law, if such it can be, of the North American Phonograph Company. Any person, natural or artificial, into whose hands, after the execution of the contract between the North American Company and the Columbia Company, the control of the Edison patents came, with knowledge or notice, actual or constructive, of the existence of such contract and of the rights of the Columbia, must be assumed to have taken subject to such rights, and to be disqualified from infringing in any manner the exclusive license given to the Columbia Company. If this were not so, it is

very plain that rights granted under a patent might be destroyed with impunity against the will of the owner of the right by the mere transfer of the patent.

This proposition does not seem to be seriously, if at all, controverted on behalf of the appellants. The burden of their argument appears to be, either that the bill of complaint is defective in its allegations, or that the contract between the North American Phonograph Company and the Columbia Phonograph Company is invalid in itself as seeking to impress upon a chattel or personal property a qualified ownership inconsistent with the freedom of transfer and the rights of possession. But we fail to see the force of this proposition. The bill of complaint, it is true, might have been more definite and specific. This, if need be, can easily be cured by amendment. And with reference to the objection that the contract between the North American Company and the Columbia Company involves a violation of public policy in seeking to restrain the freedom of sale and transfer of a patented article, we fail to see why the renting of a phonograph may not be as proper in contemplation of law as the renting of a piano or of any other article of furniture.

The contract between the North American Company and the Columbia Company may be defective and insufficient; but it would scarcely be proper so to hold at this hearing, when the real parties in interest might not be bound by the decision, and the cause has not been fully developed by testimony.

The suggestion that the appellee does not itself perform the contract in question, and sells only graphophones, and not phonographs, thereby discriminating against the latter, is, of course, no answer to an application for an injunction *pendente lite*. The suggestion, if well founded, may well be availed of in a cross-bill, or other proceeding, either to enforce or to vacate the contract.

As the case now stands, we see no reason to disturb the discretionary power exercised by the equity court in awarding an injunction *pendente lite* and thereby maintaining the existing status of things. And in the absence of answer

on the part of the defendants, and in the absence also of testimony which might materially enlighten the case, we do not deem it expedient to go at all into its merits. It is sufficient for us now to say that, in our opinion, the appellant, as complainant in the court below, has stated a cause which entitles it to a temporary injunction; and that, therefore, there was no error in the action of the court which awarded such injunction.

The order allowing the injunction *pendente lite* will be *affirmed, with costs; and the cause will be remanded for further proceedings therein according to law. And it is so ordered.*